13483

PARDUE v. PARDUE

(166 S. E., 101)

Messrs. *J. S. Bussey, Jr., Hendersons & Salley* and *S. M. Smith,* for appellant,

Messrs. *J. W. Thurmond, J. S. Thurmond* and *T. B. Greneker,* for respondent,

October 5, 1932.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action, which was commenced in the Court of Common . Pleas for Edgefield County, January 15, 1931, is a suit by Mrs. Clara E. Pardue, as plaintiff, against the defendant, W. A. Pardue, who is her husband, for the purpose of obtaining judgment in the sum of $5,000.00 for personal injuries alleged to have been caused directly and proximately by the heedlessness and recklessness of the defendant, on the 24th day of August, 1930, under the following circumstances: The plaintiff, on said date, August 24, 1930, was invited by her husband, defendant herein, to take an automobile trip with him from their home in Edgefield County, this State, to Greenville, S. C. When they reached a point about two miles of Laurens, S. C., they discovered a puncture in the left rear tire. The defendant proceeded to drive on until he could find a convenient place to change the tire. He stopped on the left side of the road near a garage at a negro house, took the tools from under the front seat, jacked up the car, and changed the tire, and then let the car down, placed the tools under the front seat, and went off behind the negro house to a well to wash his hands. After the defendant left, the plaintiff got into the

front seat, and as she did so, the car began to roll backwards. Whereupon, the plaintiff, becoming frightened, attempted to get out of the car while it was in motion, and she either fell or was knocked down by some portion of the car and "the end of the bone of her left arm, where it enters into the socket of the left shoulder, was fractured and dislocated, and she was otherwise bruised." The specific allegations of negligence were as follows:

"(a) The defendant when he left said car to wash his hands knew that the plaintiff intended to get in the car at once and failed to notify her that the slightest jar was liable to start it and cause it to run backwards down the hill, and knew, too, that the plaintiff did not know how to operate the car, or to stop it.

"(b) The defendant left the car on the steep slope aforesaid, without brakes and out of gear and knew the plaintiff was in the act of getting in the car, and failed to notify her not to get in the car until he returned.

"(c) In failing to apply the emergency brake before leaving said car and in not scotching it so as to hold it and make it safe until he returned."

In his answer to the complaint, the defendant admitted that the plaintiff was his wife and that he and she are residents and citizens of Edgefield County, said State. He also admitted that on or about the date alleged August 24, 1930, he invited the plaintiff to ride with him from their home in Edgefield County to Greenville, S. C., and that on said trip the plaintiff was injured, but the defendant denied that "the plaintiff was injured through any acts of negligence, carelessness, recklessness, heedlessness or wantonness on the part of the defendant." The defendant further alleged that whatever injuries the plaintiff received at the time and place mentioned "were the direct and proximate result of her own negligent, careless, willful, wanton, heedless and reckless acts in the following particulars:

"(a) In that the plaintiff attempted to alight from the automobile in question while it was in motion, and when it was perfectly plain and obvious that if she had remained thereon no harm or damage would have befallen her.

"(b) In that the plaintiff placed herself in the way of the open and protruding door of the moving car, thereby placing herself in a position of obvious danger, when, if she had remained in the car, no injury would have occurred.

"(c) In the manner of alighting from said car the plaintiff so improperly handled herself as to cause herself to fall to the ground, and thereby causing herself to receive whatever injuries she may have suffered from the fall, and

"(d) In that the plaintiff failed to exercise due care and caution to observe that the automobile was in a position whereby it might start or move from its position if she boarded the same, and in carelessly, heedlessly and recklessly jumping from said automobile while in motion."

The defendant, further, interposed the plea of contributory negligence, carelessness, and willfulness; and also alleged that if the plaintiff's alleged injuries were not due entirely to her own acts of negligence, recklessness, and willfulness, as above alleged, as the proximate cause thereof, or if her said acts of negligence, willfulness, etc., as alleged in defendant's answer, did not contribute to the bringing about of the said injuries, as a proximate cause thereof, then the said alleged injuries of the plaintiff were due entirely to an accident for which the defendant is not responsible.

The case was tried at the July (1931) term of said Court, before Judge C. J. Ramage, and a jury, resulting in a verdict for the plaintiff in the sum of $1,750.00, and from the judgment entered on the verdict the defendant has appealed to this Court, presenting thirteen exceptions, under which error is imputed to the trial Judge.

The first exception imputes error to his Honor in refusing defendant's motion for a continuance of the case, based upon the ground that just before entering into the trial of

the case, and when the clerk was listing the jury, in the presence of the thirty-six jurors, who had been drawn to serve for the week, in open Court, and the presiding Judge inquired if any of the jurors were related by blood or marriage to the plaintiff or defendant, the following occurred:

"Mr. J. Wm. Thurmond: We would like to ask if any juror is an agent of an insurance company.

"Mr. Bussey: We object to that and move for a continuance.

"The Court: I overrule it.

"Mr. Bussey: We move for a continuance of the case until the next term of the Court on account of the announcement of counsel about an insurance company when there is no insurance company a party to this suit; it will be prejudicial and not proper to bring that into the case.

"The Court: I think the jurors in Edgefield County are competent men, and I instruct them to pay attention to nothing but the evidence and not the remarks of counsel.

"Mr. Thurmond: Now, if your Honor please, I never said anything about insurance companies except I wanted to know if there was any agent—there might be some juror who is an agent, and if so it is perfectly competent for me to ascertain it; I am not divulging a thing, but it is competent for me to inquire—

"The Court: If any juror has been prejudiced by anything that has been said I would like for him to stand up and I will let him off.

"The defense: Since the last remarks of counsel, we would like to renew the motion on the same ground.

"The Court: All right, the motion is overruled, and I am sure the jurors will be governed entirely by the evidence and the charge of the Court, and not by remarks of counsel; I tell them that now."

It is a recognized rule that motion for continuance is a matter largely within the discretion of the trial Judge, and unless it clearly appears that the trial

Judge abused his discretion in refusing the motion this Court will not interfere. We fail to see wherein the trial Judge abused his discretion in passing upon the motion in question. In fact, under our view of the case, the occurrence in Court to which we have called attention, and concerning which the appellant complains, furnishes no ground for granting a motion for a continuance. This exception will, therefore, have to be overruled.

Under the second exception appellant imputes error to the trial Judge as follows: "The presiding Judge erred in refusing to allow the defendant to answer the question propounded to him by defendant's counsel, upon objection by plaintiff's counsel, while on cross examination, 'If Mrs. Pardue had stayed in the car, would she have been hurt?' The error being that as the witness had detailed the surrounding facts and circumstances, it was competent for him to give an opinion on the question; and as the answer to said question was very material on the point that plaintiff's injury was due entirely to her own fault, it was harmful and prejudicial to the rights of the defendant for his Honor to sustain the plaintiff's objection thereto."

The answer to the question propounded to the defendant could only have been speculative and an expression of an opinion. The defendant could in no sense have been regarded as an expert and he should have been asked to state the facts and not express his opinion as to what result such facts might produce, for such an answer would have been mere speculation. As we view the case, the trial Judge committed no error in sustaining the objection made by plaintiff's counsel.

Under the third exception error is imputed to the trial Judge for refusing defendant's motion for a nonsuit and direction of a verdict in favor of the defendant on the ground that the defendant being the husband of the plaintiff, and there being no statute in this State

authorizing a wife to sue her husband in tort for damages for personal injuries in a case like this, and under the common law a wife could not sue her husband in tort for damages for personal injuries in a tort case, she cannot recover in this suit, and also alleges error because the trial Judge refused to charge the jury to this effect. This exception cannot be sustained. The action is clearly authorized under Section 357, Volume 1 of the Code of 1922, Section 400, Volume 1 of the Code of 1932. See also, in this connection the case of *Prosser v. Prosser,* 114 S. C., 45, 102 S. E., 787.

Under Exceptions 4, 5, 6, 7, 8, 9 and 10, which will be considered together, error is imputed to the trial Judge because his Honor refused to grant defendant's motion for a nonsuit and direction of a verdict, based on the ground that defendant was entitled to this relief under the testimony in the case. In our opinion, under no view of the case was the defendant entitled to have these motions granted. There was testimony to the effect that the plaintiff knew nothing of operating an automobile and was not familiar with the manner in which an automobile is operated. The inference is clear that when the defendant got the tools from under the front seat the plaintiff changed to the back seat, and it further appears that when the tire had been changed and when the defendant went away to wash his hands, the plaintiff started to go back on the front seat and the car rolled backwards, for the reason that the brakes were not on. In this connection, the defendant testified: "When I went off to wash my hands I did not just forget to put the brake back on. I suppose I was just taking a chance. I don't see how I could have forgotten it. I suppose I was just taking a chance in not putting them back on. I told Mrs. Pardue to get in the car; that I was going to wash my hands." The defendant further testified, in this connection: "Right where the car was parked there was no incline to amount to anything—where the car was

parked—but back behind the car; the car was right on the peak of the hill, just on the crown of the hill."

We find no error in his Honor refusing to grant defendant's motion for a nonsuit or for direction of a verdict.

Under Exceptions 11, 12 and 13 error is imputed to the trial Judge in respect to the charge to the jury. We have examined the charge carefully, and when the same is taken as a whole we are satisfied that the jury was not misled and that the defendant got a fair trial.

All of the exceptions are overruled, and it is the judgment of this Court that the judgment of the Circuit Court be, and the same is hereby, affirmed.

Mr. Chief Justice Blease and Messrs. Justices Stabler and Bonham concur.

Mr. Justice Bonham (concurring): I concur in the main opinion by Mr. Justice Carter, but lest a wrong deduction be made, I venture to express a further view on one phase of the case.

I think it was error to permit counsel, while the jury was being listed by the clerk, to ask that the jurors be questioned as to whether any of them were agents of insurance companies. There was nothing in the pleadings which directly suggested that an insurance company was interested in the outcome of the trial. The effect of the question sought to be asked of the jurors was, necessarily, to inform the jurors that such an issue was involved. Ordinarily such a situation would make it obligatory on the Court to continue the case, or if the trial had been entered upon, to direct a verdict. This Court is committed to complete adherence to the doctrine expressed by Mr. Justice Woods in the case of *Horsford v. Carolina Glass Company,* 92 S. C., 236, 75 S. E., 533, 541: "There can be no doubt on the bench or at the bar, that, in an action by an employee against his employer to recover damages for personal injury, both reason and authority forbid bringing into the evidence or argument the fact that defendant is protected

by employer's liability insurance. Such evidence or argument has a manifest and strong tendency to carry the jury away from the real issue and to lead them to regard carelessly the legal rights of the defendant on the ground that some one else will have to pay the verdict. This is the only reason that can be assigned for attempting to use such testimony and argument. One of the most manifest and pressing duties, not only of Courts, but of lawyers, is to prevent influences of this kind from finding their way into the administration of justice. In the discharge of this duty the entire commonwealth is deeply concerned, for the use in evidence and argument of such influences produces injustice, and waste of the time and labor of Courts and juries at great public cost."

This is the generally accepted principle in the large majority of the jurisdictions. This Court desires it to be understood that it stands squarely by that principle as it was announced by the eminent jurist whose words I have quoted.

But, it does not necessarily follow that in every case in which the question of the protection of defendant by indemnity insurance is injected into the trial of the case that the case should be taken from the jury.

There may be circumstances connected with the introduction of the question of insurance which negative the injurious effects of its introduction, and which would make the sending of the case back, after verdict against the defendant, a useless gesture. Such circumstances are here. The jury had not been drawn, although the whole panel was present in Court and heard the colloquy between the Court and counsel. The presiding Judge promptly instructed all the jurors to pay attention only to the evidence, and not to the remarks of counsel— and no evidence was attempted to be introduced, nor argument made, relative to the question of insurance. The Court said: "If any juror has been prejudiced by anything that

has been said, I would like for him to stand up and I will let him off." To this there was no response.

But more controlling is this view: Here was an action by a wife against her husband to recover damages for personal injuries suffered by her by reason of the alleged heedless and reckless conduct of the husband. It was not an action against the husband for damages inflicted by him upon his wife by way of assault and battery, or other indignity against the person of the wife. It was patent that the plaintiff and husband were on amicable terms. The Court will take notice that in this day of use of automobiles many owners of such machines carry insurance to indemnify them for damages claimed of them for injuries inflicted by their cars. In such state of facts every intelligent juror on that panel knew, before any question was asked, that defendant was protected by indemnity insurance.

Hence while the question proposed by counsel to be asked of jurors was objectionable, it did not in the circumstances warrant granting the motion for continuance of the case or a directed verdict in favor of defendant.

MR. CHIEF JUSTICE BLEASE and MR. JUSTICE STABLER concur.